UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JAMES M. BAKER, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 05-781 (RMU) |
| | : | | |
| GORDON ENGLAND, | : | Document Nos.: | 6, 11 |
| | : | | |
| and | : | | |
| | : | | |
| DEPARTMENT OF THE NAVY, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

Denying the Defendants' Motion to Dismiss;
Denying the Plaintiff's Motion for Summary Judgment;
Granting the Defendants' Motion for Summary Judgment

I.   INTRODUCTION

This case is before the court on the defendants' motion to dismiss and for summary judgment[1] and the plaintiff's motion for summary judgment. The plaintiff, James Baker, is a Major in the United States Marine Corps. He sought modifications of his personnel records with the Marine Corps on four occasions since 1992. On all four occasions, functionaries at the Marine Corps denied those requests, finding that there were no inaccuracies warranting revision of his records. The plaintiff now seeks a judicial ruling that these four determinations violated his rights under the Privacy Act and are in violation of the Administrative Procedures Act ("APA"). Specifically, the plaintiff claims that the Privacy Act mandates modification of his personnel records to correct for factual inaccuracies and that the four prior denials were arbitrary

---

[1] Although the defendants filed a combined motion to dismiss and motion for summary judgment, for clarity, the court will refer to the defendants motion as two distinct motions.

and capricious in violation of the APA.  Conversely, the defendants claim that the Privacy Act's statute of limitations bars the plaintiff's claims, that the Privacy Act limits modifications of personnel records to factual matters rather than opinion matters, and that the agency's determinations were not arbitrary and capricious.  Because the plaintiff is exempt from the Privacy Act's statute of limitations, the court denies the defendants' motion to dismiss.  Because the Privacy Act limits modifications of personnel records to factual matters, rather than matters of opinion, and because the plaintiff sought modifications of matters of opinion, the court denies the plaintiff's motion for summary judgment and grants the defendants' motion for summary judgement as to the plaintiff's Privacy Act claim.  As to the plaintiff's APA claim, because the administrative determinations regarding the plaintiff's request for modification of his personnel file were not arbitrary and capricious, the court denies the plaintiff's motion for summary judgment and grants the defendants' motion for summary judgement .

## II. BACKGROUND

### A. Factual Background

The plaintiff, James Baker, is a Major in the United States Marine Corps.  On June 27, 1992, the plaintiff's reporting officer, then-Lieutenant Colonel E. R. Timothy, signed a fitness report ("Fitness Report A") for then-Captain Baker ranking him ninth among the nine captains in his battalion.  Defs.' Mot. to Dismiss and for Summ. J. ("Defs.' Mot.") at 4; Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 3.  This report evaluated the plaintiff through his first two months as a captain in the Marine Corps – from October 1, 1991, through December 12, 2001.  *Id.*; Defs.' Mot. at 4.

The Marine Corps Command and Staff College failed to select the Plaintiff for admission

in 2000.  Compl. ¶ 18.  On May 22, 2001, the plaintiff petitioned the Board for Correction of Naval Records ("BCNR") to remove Fitness Report A from the plaintiff's record.  Compl. ¶ 7; Admin. R. ("A.R.") 15-19.  In response to this petition, the Headquarters Marine Corps Performance Evaluation Review Board[2] ("PERB") issued an advisory opinion on August 19, 2001, concluding that Lieutenant Colonel Timothy's ranking of the plaintiff as ninth out of nine captains was not "simply because of a seniority issue."  A.R. 22-23.  On September 13, 2001, after reviewing the plaintiff's request, a three-judge panel of the BCNR "substantially concurred" with the PERB opinion and denied the plaintiff's request for modification of Fitness Report A.  A.R. 25-26.

In 2000 and 2001, the plaintiff received two annual reports ("Fitness Report B" and "Fitness Report C," respectively) from Rear Admiral D. L. Brewer, each stating that there was "insufficient information" to provide a comparative assessment of the plaintiff or to provide additional comments.  Compl. ¶ 7.  In the Fall of 2001, the Fiscal Year 2003 Lieutenant Colonel Selection Board ("FY03 Selection Board") convened and decided not to select the plaintiff for a promotion.  Compl. ¶ 7.  Following this rejection, the plaintiff, on June 3, 2002, petitioned the BCNR to modify his personnel record to replace Fitness Report B and Fitness Report C with amended reports containing comments from Rear Admiral Brewer, and by removing the record of his failure to select from the FY03 Selection Board.  Compl. ¶ 23; A.R. 29-34.  The PERB issued an advisory opinion on September 4, 2002, indicating that it found "no evidence

---

[2] The Headquarters Marine Corps Performance Evaluation Review Board ("PERB") "was established as the initial action agency for fitness report appeals which are submitted to the [Board of Correction of Naval Records ("BCNR")]."  Secretary of Navy Instruction 5420.193; Marine Corps Order 1610.11C.

indicating any factual errors associated with [Fitness Report B or Fitness Report C]," and concluding that these two fitness reports were "administratively correct and procedurally complete." Compl. ¶ 24. The plaintiff submitted a rebuttal to the PERB report on September 10, 2002. A.R. 70-72. On September 27, 2002, the Officer Counseling and Evaluation Section's Personnel Management Division ("OCE") forwarded an advisory opinion to the BCNR. Defs.' Mot. at 7; A.R. 78-80. On October 9, 2002, the plaintiff submitted a rebuttal to the OCE opinion. A.R. 84-85. Based on these submissions, a three-member panel of the BCNR denied the plaintiff's request to replace Fitness Report B and Fitness Report C with amended versions, and to remove the plaintiff's failure to select for the FY 03 and FY 04[3] Lieutenant Colonel Selection Boards from his personnel file. Defs.' Mot. at 7-8; A.R. 89-90.

On June 18, 2003, and July 2, 2003, Colonel Timothy forwarded letters to the BCNR regarding Fitness Report A. A.R. 91, 93. The BCNR treated these letters from Colonel Timothy as a request for reconsideration. Defs.' Mot. at 8; A.R. 95. Based on these letters, as well as a proposed substitute fitness report supplied by the plaintiff on July 29, 2003, the PERB recommended to the BCNR that it deny the plaintiff's request for reconsideration. A.R. 101. On August 19, 2003, the plaintiff submitted a rebuttal to the PERB recommendation.[4] *Id.* at 102-109. A three-member panel of the BCNR convened on August 21, 2003, to consider the plaintiff's request for reconsideration. A.R. 119-121. The BCNR voted unanimously to deny the

---

[3] In the fall of 2002, the Fiscal Year 2004 Lieutenant Commander Selection Board ("FY04 Selection Board") did not select the plaintiff for promotion to Lieutenant Commander. A.R. 89-90; *See* Compl. ¶ 26.

[4] Additionally, on August 7, 2003, the Office of Counseling and Evaluation Section, Personnel Management Division recommended that if the BCNR approved Baker's request to modify his records, it also remove all records of his failures to select by the FY03 and FY04 selection boards. A.R. 110-111.

plaintiff's requested relief. *Id.*; Compl. ¶ 31.

The Fiscal Year 2005 Lieutenant Commander Selection Board ("FY05 Selection Board"), and the Fiscal Year 2006 Lieutenant Commander Selection Board ("FY06 Selection Board"), which convened in the Fall of 2003 and 2004 respectively, did not promote the plaintiff to lieutenant commander. *Id.* ¶ 33, 39. These two rejections themselves spawned a new volley of requests, letters, recommendations, and hearings, culminating ultimately in the BCNR's unanimous vote, on November 18, 2004, to reject the plaintiff's contentions and deny his request for modification of his record. A.R. 295, 302-303.

Following the FY05 and FY06 Selection Boards' non-selections of the plaintiff, on November 1, 2004, the plaintiff requested that the Marine Corps amend his personnel record pursuant to the Privacy Act, 10 U.S.C. § 1552(a)(1). Compl. ¶ 36. The Marine Corps denied this request on December 10, 2004, *Id.* ¶ 38, and on January 4, 2005, the plaintiff appealed to the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("MRA"). *Id.* ¶ 40. The MRA denied the plaintiff's appeal on January 21, 2005. *Id.* ¶ 41.

Following that string of denials, the plaintiff sought judicial relief and initiated the instant suit on April 18, 2005. The plaintiff has filed a motion for summary judgment and the defendants have filed a motion to dismiss and for summary judgment. The court now turns to these motions.

### III.   ANALYSIS

#### A.   Legal Standards

#### 1.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2.     Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Plaintiff is Exempt from the Privacy Act's Two-Year Statute of Limitations

The defendants argue that this court should dismiss the plaintiff's complaint because the Privacy Act's two-year statute of limitations bars the plaintiff's Privacy Act claim. Defs.' Mot. at 11-12 (citing 5 U.S.C. § 552a(g)(5) and *Bernard v. U.S. Dep't of Defense*, 362 F. Supp. 2d 272, 2748 (D.D.C. 2005)). According to the defendants' calculations, the plaintiff should have filed the complaint with respect to Fitness Report A on May 22, 2001, and with respect to Fitness Report B and Fitness Report C on June 3, 2002. *Id.* at 13. The plaintiff argues, however, that because he is an active duty service member, the Privacy Act's statute of limitations period is tolled. Pl.'s Mot. at 22-23.

The plaintiff is correct. Under the Servicemembers Civil Relief Act, codified at 50 U.S.C. App. § 501, *et seq.*, "the period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in court[.]" 50 U.S.C. App. § 526(a). The court need not waste much discussion as the statute is unambiguous. Indeed, although the defendants led off with the statute of limitations argument in their motion to dismiss and for summary judgment, they abandoned it completely when time came for their reply, after the plaintiff referenced the Servicemembers Civil Relief Act in rebuttal. The D.C. Circuit, moreover, has held that this statute's immediate predecessor and substantive equivalent – 50 U.S.C. App. § 525 – tolls "'any' limitations period . . . appearing in 'any' law for the bringing of 'any' action before 'any' court, board or bureau." *Detweiler v. Pena*, 38 F.3d 591, 593 (D.C. Cir. 1994) (citing *Conroy v. Aniskoff*, 507 U.S. 511,

514 (1993)). Because the plaintiff has been an active duty member of the United States Marine Corps since the first fitness report, the Servicemembers Civil Relief Act applies, and the Privacy Act's statute of limitations does not. For that reason, the court denies the defendants' motion to dismiss on statute of limitations grounds.

### C.    The Privacy Act Allows Modification of Factual Matters, not Opinion Matters

According to the plaintiff, the defendants' refusal to make changes to the plaintiff's personnel file violated the Privacy Act. Pl.'s Mot. at 29. The Privacy Act states in pertinent part that "each agency that maintains a system of records shall . . . permit the individual to request amendment of a record pertaining to him and . . . promptly . . . make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete[.]" 5 U.S.C. § 522(2)(B)(i). The Navy may grant an amendment request for records that are not "accurate, relevant, timely, complete, [or] necessary . . . to the extent necessary to meet [these criteria]." 32 C.F.R. § 701.110(e). The plaintiff's current Privacy Act claim is predicated on his belief that Fitness Report A is "inaccurate and administratively incorrect," and that Fitness Reports B and C are "inaccurate and incomplete."[5] Pl.'s Mot. at 31, 32.

Section 701.110 of the Code of Federal Regulations provides an individual a "right to

---

[5] By filing his Privacy Act claim, the plaintiff invoked the procedures set forth in the Code of Federal Regulations, which provides that:
> [a]n individual may request to amend any record retrieved by his or her personal identifier from a system of records, unless the system has been exempt from the amendment procedures under this subpart. Amendments under this subpart . . . [are] limited to correcting factual matters, not matters of opinion (i.e., information contained in evaluations of promotion potential or performance appraisals). When records sought to be amended are covered by another issuance, the administrative procedures under that issuance must be exhausted before using the Privacy Act. In other words, the Privacy Act may not be used to avoid the administrative procedures required by the issuance actually covering the records in question.

32 C.F.R. § 701.110(a)(1).

amend . . . any record retrieved by his or her personal identifier[.]" 32 C.F.R. § 701.110 (a)(1). This right to amend, however, is "limited to correcting factual matters, not matters of opinion (i.e., information contained in evaluations of promotion potential or performance appraisals)." *Id.* The plaintiff contends that the text of this regulation notwithstanding, he should be permitted to seek revision of the three fitness reports in his record. Pl.'s Mot. at 31-32. In support of this position, the plaintiff cites *R.R. v. Department of the Army*, 482 F. Supp. 770, 774 (D.D.C. 1980) (Gesell, J.). In *R.R.*, the court addressed a non-English speaking service member's suit to correct alleged substantive errors in his Army medical records underlying a medical diagnosis of schizophrenia, when subsequent evidence undermined the soundness of that medical conclusion. *R.R.*, 482 F. Supp. at 774. The court stated that:

> [i]t would defy common sense to suggest that only factually erroneous assertions should be deleted or revised, while opinions based solely on these assertions must remain unaltered in the individual's official file. An agency may not refuse a request to revise or expunge prior professional judgments once all the facts underlying such judgments have been thoroughly discredited. This position is reinforced in the [Privacy] Act's legislative history, where there are clear indications that insidious rumors and unreliable subjective opinions as well as simple factual misrepresentations fall within the ambit of the Act's strictures.

*Id.* at 774. Further, the plaintiff cites a Central District of Illinois opinion quoting *R.R.* approvingly. *Ertell v. Dep't of the Army*, 626 F. Supp. 903, 911 (C.D. Ill. 1986). The court in *Ertell*, however, distinguished *R.R.*, stating that "[t]he Court cannot find, as did Judge Gesell, that the facts underlying prior professional judgments have been thoroughly discredited." *Id.*

The court concludes that the facts in this case more closely resemble *Ertell* than *R.R.* Plaintiff Baker seeks replacement of the fitness reports not because any facts underlying those reports have "been shown conclusively to be false," *R.R.*, 482 F. Supp. at 775, but rather, because the drafters of those reports have since unilaterally determined that their reports are inaccurate

and incomplete. Pl.'s Mot. at 31-32. Thus, in contrast to *R.R.*, the plaintiff seeks revision of a fitness report (an opinion) because the drafters' opinions have changed, when the selection board used these reports to formulate promotion evaluations (opinions). Two too many opinions differentiate Baker's case from *R.R.*[6] Given the clear textual limitation of revisions to "factual matters, not matters of opinion," the court is confident that the plaintiff is not entitled to the revision he seeks. *See Kleiman v. Dep't of Energy*, 956 F.2d 335 (D.C. Cir. 1992) (holding that "[t]he Privacy Act allows for amendment of factual or historical errors. It is not, however, a vehicle for amending the judgments of federal officials or . . . other[s] . . . as those judgments are reflected in records maintained by federal agencies" ) (internal citations and quotations omitted) (modification in original)). For these reasons, the court denies the plaintiff's motion for summary judgment as to his Privacy Act claim and grants the defendants' motion for summary judgment as to the same.

### D.  Plaintiff's Administrative Review Claim

According to the plaintiff, the BCNR's decisions were arbitrary and capricious because the BCNR refused to follow 10 U.S.C. § 1552. Section 1552 states that a record may be modified to "correct an error or remove an injustice." 10 U.S.C. § 1552.

#### 1.  Legal Standard for Judicial Review of Agency Actions

The APA entitles "a person suffering legal wrong because of agency action, or adversely

---

[6] The court need not address an instance in which the factual circumstances involved in the case closely resemble those in *R.R.* However, when an agency's opinion is based on factual information later found to be wholly incorrect, a departure from the standard discussed herein may be appropriate. In the present case, however, the court declines the plaintiff's invitation to muddle the legal waters. Nothing the plaintiff has presented suggests that the fitness reports are rendered baseless because a factual assumption underlying them has been disproved. Thus, though there may exist instances in which Judge Gesell's words compel that the court chart a new course, the plaintiff's current predicament does not present such an instance.

affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

"The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result." *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993). This requirement is not particularly demanding, however. *Id.* Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." *Tourus Records*, 259 F.3d at 737. If the court can "reasonably discern[]" the agency's path, it will uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

### 2.     The BCNR's Determinations Were not Arbitrary and Capricious

The court turns to the BCNR's decisions in evaluating whether they are arbitrary and capricious, as the plaintiff claims. The court recognizes that the agency has the burden of adequately explaining its result, though this burden is not onerous. *Pub. Citizen, Inc.*, 988 F.2d at 197.

On September 14, 2001, the three-member BCNR panel denied the plaintiff's request to remove Fitness Report A from his record. A.R. 25-26. The report issued in conjunction with that determination states that the panel considered the plaintiff's "application, together with all material submitted in support thereof, [the plaintiff's] naval record and applicable statutes, regulations and policies. In addition, the Board considered the report of the [PERB]." *Id.* The report states that the plaintiff's application was denied, in large part, based on the "comments contained in the report of the PERB." *Id.* The PERB report, in turn, states that the reason the plaintiff was ranked by his reporting officer as ninth among nine captains was "because of the more significant billets held and relatively more experience of the petitioner's peers, they were higher performers, but that did not diminish the petitioner's efforts and contributions." A.R. 22. Based on these findings, the PERB concluded that there was no proof that "Lieutenant Colonel

13

Timothy rank-ordered the petitioner as '9 of 9' in the 'outstanding' column . . . simply because of the seniority issue." *Id.*

The BCNR, in its March 23, 2003 report, stated that the panel was unpersuaded that the reviewing officer was being untruthful when he indicated that "he had 'insufficient' observation" to provide a comparative assessment or to provide additional comments.  A.R. 89.  The BCNR stated that it relied on the full record, the plaintiff's rebuttal, the PERB report, the advisory opinion from the OCE, and an e-mail from a Marine Corps Lieutenant Colonel in formulating its decision.  *Id.*

On August 21, 2003, the BCNR denied the plaintiff's request for reconsideration of its previous decision denying the plaintiff's request for modifications to his records.  According to the report issued in conjunction with that denial,

> the Board substantially concurred with the comments contained in the advisory opinion from [OCE] in concluding that no correction to [the plaintiff's] fitness record was warranted.  Since the Board again found no defect in your performance record, it again had no basis to remove [the plaintiff's] failures of selection by the FY 2003 and 2004 Lieutenant Colonel Selection Boards.

A.R. 121.

Finally, on November 18, 2004, the BCNR denied the plaintiff's request to have Fitness Report A removed from his record, to substitute amended versions of Fitness Report B and Fitness Report C, and to remove the plaintiff's failures to select by the FY05 and FY06 Selection Boards.  A.R. 302.  Because "new and material evidence or other matter not previously considered" was not presented to the panel, the plaintiff's request was denied.  *Id.* 303-304.

Each of the four BCNR rulings include specific indications of the supporting material used in rendering the determination, and include "brief statement[s]" which explain "why [the BCNR] chose to do what it did."  *Tourus Records*, 259 F.3d at 737.  Although the plaintiff

disagrees with the BCNR's rulings, Pl.'s Mot. at 43, the court is "not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. The court's task is solely to determine whether there is a "rational connection between the facts found and the choice made." *Bowen*, 476 U.S. at 626. The court is confident that the panel's decision was based on "a consideration of the relevant factors." *Marsh*, 490 U.S. at 378.

The plaintiff begins his motion for summary judgment by stating his understanding of the central question in this case – "[i]s the information in Major Baker's military record accurate and complete?" That question, however, is not before the court. The court's role is merely to determine whether the BCNR's actions were arbitrary and capricious, by assessing whether the "decision making process was deficient, not whether [the] decision was correct." *Kreis*, 866 F.2d at 1511. From the Administrative Record, the court rules that the BCNR's determinations were not arbitrary and capricious, and accordingly, the defendants are entitled to summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss, denies the plaintiff's motion for summary judgment, and grants the defendants' motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 31st day of October, 2005.

RICARDO M. URBINA  
United States District Judge